**Gillespie, Ryan**

| | |
|---|---|
| **From:** | Sean L Harrington <sean@seanharringtonlaw.com> |
| **Sent:** | Saturday, March 15, 2025 9:42 AM |
| **To:** | jbruckman@freeborn.com; Dunlap, Jeffrey; lflagg@beneschlaw.com; Gillespie, Ryan; rhepp@beneschlaw.com; jkoechley@sgrlaw.com; Linehan, Matthew; spearson@sgrlaw.com; Pollack, Larry; Saltz, Ashtyn; rzimmerman@beneschlaw.com |
| **Subject:** | Re: CBIZ, Inc. et al. v. Cryan et al. |
| **Attachments:** | 2025-03-12_memo-toCourt.pdf; 155.pdf |



**This message needs your attention**

• No employee in your company has ever replied to this person.

Mark as Safe                                Powered by Mimecast

Last week, I provided information about a false declaration filed in this case that triggers an affirmative duty to notify the Court of perjured testimony.

Earlier this week, counsel of record in a Federal case in New Jersey asked the magistrate judge to refer the expert fraud, Mark Lanterman, to the U.S. Attorney's office on the basis of an identical declration.  See filing attached hereto.

And yesterday, Perkins Coie filed a bombshell about Lanterman's false declarations in that pending Federal case in the Northern District of Florida, also attached hereto.


Sent from my iPad -- please pardon my typos

Sean L. Harrington, J.D.
CIPP/US, MCSE, CSOXP, CISSP, CHFI, CCFP

Sean Harrington Law Office
Bar Admissions: Wisconsin, California
direct: 508.361.2018
http://seanHarringtonLaw.com
Volunteer Investigator, 4th Judicial District Ethics Committee (Minnesota Office of Lawyers Prof'l Responsibility)
Special Investigator, Special Investigative Panel, Wisconsin Office of Lawyer Regulation
http://linkedin.com/in/sean-l-harrington-6b20958


On Mar 9, 2025, at 10:37 AM, Sean L Harrington <sean@seanharringtonlaw.com> wrote:

Dear Counselors:

In the above-captioned cause, Mark Lanterman falsely testified, among other things, "*I graduated from Upsala College with both a Bachelor of Science and a Master's degree in computer science. I completed my post graduate work in cybersecurity at Harvard University.*" Document 18-2.

These statements are false, and it appears that Plaintiff's counsel didn't perform sufficient due diligence.  Mr. Lanterman did not complete any "Postgraduate work in cybersecurity at Harvard University," and my investigation has revealed that he did not earn the degrees.   See https://seanharringtonlaw.com/wp-content/uploads/2025/03/2025-03_deepfakeexperts_.pdf

Another computer forensics fraud  was convicted of and sentenced to 21 months under 18 U.S.C. § 1621(2) (perjury) for identical conduct —but on a much smaller scale than Lanterman. *See United States v. James Earl Edmiston,* No. 06-cr-0035, U.S. Court for the Eastern District of California.

You have an affirmative obligation to call this to the attention of Judge Calabrese. I also respectfully exhort you to refer this matter to the U.S. Attorney's office for investigation.

Sean L. Harrington, J.D.
CIPP/US, MCSE, CSOXP, CISSP, CHFI, CCFP

Sean Harrington Law Office
Bar Admissions: Wisconsin, California
direct: 508.361.2018
http://seanHarringtonLaw.com



ABRAHAM J. ZAGER (1941-1999)
LAWRENCE M. FUCHS (1970-2020)
ANDREW W. KRANTZ
MICHAEL T. WARSHAW*
KEVIN I. ASADI
LYNN E. STAUFENBERG**I
JASON L. WYATT♦

ARTHUR L. CHIANESE, OF COUNSEL
SUSAN L. GOLDRING, OF COUNSEL
ALBERT A. ZAGER, OF COUNSEL

*ADMITTED TO THE NEW YORK BAR
CERTIFIED AS ARBITRATOR AND MEDIATOR, R.1:40

**ADMITTED TO THE PENNSYLVANIA BAR
QUALIFIED FAMILY LAW MEDIATOR
REGISTERED GUARDIAN

♦ LL.M. IN TAXATION

March 12, 2025

Honorable Cathy L. Waldor, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NewJersey07102

**Re:** **Vision Industries Group, Inc. v. ACU Plasmold, Inc.**
**Case No. 2:18-cv-06296 JKS-CLW**

Dear Judge Waldor:

As the Court knows, this firm is local-counsel for Defendant ACU Plasmold Inc. ("ACU") and Edward Miller, Esq. is trial counsel, pro hac vice. This letter is submitted to inform the Court that Plaintiff's expert, Mark Lanterman, has made verifiably false statements under oath in this case. This letter is also submitted in response to the letter filed yesterday by Plaintiff's Counsel. It is noteworthy that while Mr. Lanterman may have started as a neutral expert, albeit one selected by Plaintiff, he ultimately ended up as Plaintiff's expert.[1]

Defense counsel's original letter to Plaintiff's counsel was intended to alert a fellow lawyer of a problem with a witness that he used in a still pending motion for sanctions, where evidence of the witness's credibility issues was extensive. Rather than take that

---

[1] Mr. Lanterman was furious at Defendant's counsel for not paying his "storage fees." As a result, in a December 29, 2021 email to Defendants counsel copied to Plaintiff's counsel Mr. Lanterman wrote:
> This email serves as notice of my withdrawal from this litigation.
> Mr. Cukor and Ms. Donegan- I will accept your subpoenas or deposition notices via email. I am also agreeable to a phone call with you or the Court to discuss this development. Our case file, including all data, is scheduled to be destroyed on January 4 unless other arrangements are made.

Immediately after that, Mr. Lanterman was hired by Plaintiff as his expert.

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2025
Page 2

---

information seriously, he dismisses it as "criticism."(Doc 294 at 1). I would respectfully suggest that demonstrably false statements in documents sworn to by a witness and submitted to a court is not "criticism."

Mr. Miller originally sent an email to Plaintiff's counsel on March 7, 2025 requesting that he confirm the accuracy of the résumé that Mr. Lanterman has proffered. This was as a result of an email all counsel received (including Plaintiff's counsel) on March 7, 2025, alerting us to the issues with Mr. Lanterman. Plaintiff's counsel, in response to Mr. Miller's email, sent a letter on March 10, 2025 (ex. 1) dismissing the issue. It was as a result of that apparent indifference to the untruthfulness of his expert that Defense counsel's letter of March 11 was sent. (Doc 294-1)

While that letter highlighted one instance of the misrepresentation, the Court should be aware of the multiple factual assertions in his résumé that are either untrue or unable to be verified.

Even were there only a single misrepresentation in his résumé, the statement that he has a graduate degree in computer forensics from Harvard, when in fact he never took even a single course there is a big deal; it is not merely a "criticism." What Mr. Lanterman took was a single "Online short course" administered through *GetSmarter*© in April of 2018. The program awarded a digital certificate, is worth no college credit, and there are no undergraduate prerequisites. Registrants are advised:

> "As a Harvard Online participant . . . you will not be considered a Harvard student. When you earn your certificate or credential, you will not be considered an Harvard alum,"

and that it should be cited on résumés, including LinkedIn, as a "Certificate Program," and "Harvard Online."

Mr. Lanterman's résumé seems to be riddled with false statements; he has been unable to produce a diploma from any undergraduate college or university and there is good reason to believe that Mr. Lanterman is not a college graduate at all. And his lack of credibility owing to his lies is not a recent phenomenon. The attached decision by the District Court of Minnesota for the Fourth Judicial District in the County of Hennepin, in the 2014 case of <u>Mark Lanterman and Computer Forensic Services v. Michael Roman Afremov</u>, Court File No. 27-CV-12-22089, the Honorable Philip D. Bush found that "as with much of Lanterman's testimony, his testimony on that point is not credible." (Ex. 2, ¶ 54, p. 11). That court also noted that Mr. Lanterman had lied in a federal court proceeding:

> Paragraph 91: "In a federal court proceeding regarding the disputed invoices, Lanterman testified to a federal Magistrate Judge that he had 11 people working on the Afremov project. It has since been established that only three people were working on the Afremov project."

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2025
Page 3

_____

> Paragraph 92: "In that same proceeding, Lanterman testified unequivocally that, as of June 15, 2007, 1,500 hours of human time had been spent on the Afremov project. Lanterman would have no basis for making that representation insofar as the time records were destroyed."

The issue of Mr. Lanterman's lack of truthfulness becomes even more consequential in the context of the decision of this Court on the issue of sanctions. Mr. Lanterman inserted into the record a litany of vicious lies against Defendant's counsel Miller, most in the "Miller said" format, including: (1) Miller said that he told Mr. Quach to erase his hard drives; (2) Miller told Computer Forensic Services to write that all the data had been recovered; and, (3) Miller said "the court could go f' itself." The method for getting this libelous poison into the docket was Mr. Lanterman copying Plaintiff's counsel on emails to Defendant's counsel, knowing that Plaintiff's counsel would dutifully file the email on the docket. (See Doc Nos. 153 Ex. A, 157 Ex. A, and 166). Mr. Lanterman even participated in a Court conference on February 25, 2022, at which he continued to do everything possible to discredit Defendant's counsel. (Doc Nos. 158 – 160).

These lies were then parroted by Plaintiff's counsel in their briefs, which relied heavily upon Mr. Lanterman's not under oath statements and First Declaration (Doc No. 147; Plaintiff neatly ignores its heavy reliance on Lanterman's First Declaration).

It is sad that Mr. Cukor views all of this as, "it's (Defendant's) criticism of an expert in this case, Mark Lanterman." (Doc No. 294, at 1). It is sad for two reasons. By characterizing it as "it's criticism," Plaintiff is dissociating itself from that criticism indicating that it is neutral on the matter. Even more damningly, characterizing it as a "criticism" indicates that it is a subjective matter. There is nothing subjective here: Mr. Lanterman swore in a declaration that he had completed postgraduate studies at Harvard and admitted in a deposition that he had no postgraduate education.[2]

Yesterday, after Plaintiff had sat on this information for 5 days, Defendant sent Plaintiff a letter (Doc. 294-1) concluding: "this will be your last chance to do the right thing. If you have not informed the court by the end of business on March 11, 2024, we will be forced to do your job for you."

_____

[2] Mr. Cukor also tells us that the source of the information is a "competitor" of Mr. Lanterman's: "Apparently, a competitor of Mr. Lanterman has emailed every attorney on the docket and alleged that Mr. Lanterman is a fraud." (Doc No. 294, at 1). Why is Mr. Cukor attacking the motives of the person who brought the information to light – the information is uncontestable, both under oath statements came from Mr. Lanterman.

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2025
Page 4

Mr. Lanterman was Plaintiff's expert; he was highly aggressive against Defendant. This is fraud on the court. It is a crime for which people can be sent to prison. It invalidates everything that came out of Mr. Landerman's mouth in this case. Given the issues in this case, it is respectfully requested that the Court refer this matter to the United States Attorney for prosecution.

Further, Defendant requests this court to order Plaintiff to report to the Court every single misstatement in Mr. Lanterman's declarations, and résumé, and to then consider sanctions against Mr. Lanterman for committing perjury, and against Plaintiff's attorneys for refusing to report it to the court. Needless to say, all of Mr. Lanterman's testimony should be disregarded and the motion for sanctions against defendants based upon his testimony should be denied.

Respectfully submitted,

Michael T. Warshaw

/S/ Edward Miller

Edward Miller

MTW:kp
cc:    counsel of record via ECF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| ALLIANCE LAUNDRY SYSTEMS LLC, | |
| Plaintiff, | |
| v. | Case No. 23-cv-22130 (MCR) |
| TRUDY ADAMS, JOHN "CLAY" WILLIAMS and AUTARKIC HOLDINGS, INC. D/B/A LAUNDRYLUX, | |
| Defendants. | |

| |
|---|
| TRUDY ADAMS, JOHN "CLAY" WILLIAMS, |
| Defendants/Counterclaim Plaintiffs, |
| v. |
| ALLIANCE LAUNDRY SYSTEMS LLC, |
| Plaintiff/Counterclaim Defendant/ Third Party Defendant. |

## DEFENDANTS' MOTION TO STRIKE EXPERT DECLARATION OF MARK LANTERMAN AND EXCLUDE LANTERMAN'S TESTIMONY

Pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702 Defendants Trudy Adams, John "Clay" Williams, and Autarkic Holdings, Inc. d/b/a Laundrylux move for an order striking the Expert Declaration of Mark Lanterman and excluding the testimony of Mr. Lanterman in this matter. Defendants' Motion is based on the Memorandum of Law attached hereto.

Dated: March 14, 2025

/s/ David A. Perez

David A. Perez (admitted pro hac vice)
Evelyn Y. Pang (admitted pro hac vice)
Shireen Lankarani (admitted pro hac vice)
DPerez@perkinscoie.com
EPang@perkinscoie.com
SLankarani@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

/s/ Beth-Ann E. Krimsky

Beth-Ann E. Krimsky
Florida Bar No. 968412
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-2427
*Fax: (954) 333-4027*

*Attorneys for Defendant Autarkic
Holdings, Inc. d/b/a Laundrylux*

/s/ Jura C. Zibas

Jura C. Zibas
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
2063 Main Street, Suite 100
Sarasota, FL 34237
Telephone: (941.866.8561
Facsimile: 941.210.5979
Email: jura.zibas@wilsonelser.com

*Attorneys for Trudy Adams and John
"Clay" Williams*

# CERTIFICATE OF SERVICE

I hereby certify that Defendants' Motion for Judgment on the Pleadings and Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings were served on all counsel of record via ECF filing on March 14, 2025.

Dated:  March 14, 2025

/s/ David A. Perez
David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:  +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant Autarkic Holdings, Inc. d/b/a Laundrylux*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLIANCE LAUNDRY SYSTEMS LLC,

        Plaintiff,

    v.

TRUDY ADAMS, JOHN "CLAY" WILLIAMS
and AUTARKIC HOLDINGS, INC. D/B/A
LAUNDRYLUX,

        Defendants.

Case No. 23-cv-22130 (MCR)

_____

TRUDY ADAMS, JOHN "CLAY" WILLIAMS,

        Defendants/Counterclaim Plaintiffs,

    v.

ALLIANCE LAUNDRY SYSTEMS LLC,

        Plaintiff/Counterclaim Defendant/
        Third Party Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STRIKE EXPERT DECLARATION OF
MARK LANTERMAN AND EXCLUDE LANTERMAN'S TESTIMONY**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

LEGAL STANDARD ..............................................................................4

ARGUMENT ..........................................................................................4

    I.     Lanterman's Opinions Must Be Excluded Because They Consist Only of Conclusions and Are Not Based on Discernable Methodology. ..............................................................................4

    II.    Lanterman Appears to Have Falsified His Qualifications, Repeatedly Perjured Himself in His Deposition, and Spoliated Evidence About His Background. ..................................................13

          A.    Lanterman Admits He Has No Evidence that He Attended Upsala College. ..............................................14

          B.    Overwhelming Evidence Demonstrates Lanterman Did Not Attend or Graduate from Upsala College. ......................15

          C.    Lanterman Appears to Have Repeatedly Perjured Himself, Lying Under Oath About Graduating from Upsala College. ..............................................................17

          D.    Lanterman Appears to Be Spoliating Evidence of His Background. ..........................................................20

          E.    Lanterman Should Be Excluded for Perjury, Spoliation, and Obstructive Conduct. ......................................22

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
    61 F. Supp. 2d 1335 (S.D. Fla. 1999) ............................................................5, 8

*AZ55S, LLC v. Flinsco.com, LLC*,
    No. 22-CV-61658, 2023 WL 4564631 (S.D. Fla. June 30, 2023),
    *report and recommendation adopted*, No. 22-61658-CV, 2023 WL
    4561628 (S.D. Fla. July 17, 2023) ........................................................................24

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................................................22

*Chapman v. Procter & Gamble Distrib., LLC*,
    766 F.3d 1296 (11th Cir. 2014) .............................................................................5

*City of Tuscaloosa v. Harcros Chems., Inc.*,
    158 F.3d 548 (11th Cir. 1998) ........................................................................4, 23

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ...........................................................................4, 5, 10, 11

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*,
    2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) ...................................................22

*FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*,
    695 F. Supp. 2d 216 (W.D. Pa. 2010) ............................................................11, 12

*Hughes v. Kia Motors Corp.*,
    766 F.3d 1317 (11th Cir. 2014) ...........................................................................11

*Kilpatrick v. Breg, Inc.*,
    613 F.3d 1329 (11th Cir. 2010) .............................................................................4

*Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*,
    843 F. Supp. 2d 1318 (N.D. Ga. 2011) ................................................................23

*Lanterman v. Afremov*,
    No. 27-CV-12-22089, 2014 WL 3579827 (Minn. Dist. Ct. July 17,
    2014) .....................................................................................................................19

*Lanterman v. Afremov*,
  No. A15-0729, 2016 WL 1551602 (Minn. Ct. App. Apr. 18, 2016) ................19

*Leticia Zuniga v. SMS Holdings*,
  No. 9-cv-02120-ADM-JSM, Dkt. 175 (D. Minn. Aug. 24, 2010) ...................13

*McDowell v. Brown*,
  392 F.3d 1283 (11th Cir. 2004) ...........................................................................4

*MidAmerica C2L Inc. v. Siemens Energy Inc.*,
  No. 20-11266, 2023 WL 2733512 (11th Cir. Mar. 31, 2023) ...........................10

*Nat'l Grange Mut. Ins. Co. v. Hearth & Home, Inc.*,
  2006 WL 5157694 (N.D. Ga. Dec. 19, 2006) ....................................................23

*Oil Equip. Co. Inc. v. Mod. Welding Co. Inc.*,
  661 F. App'x 646 (11th Cir. 2016) ....................................................................23

*Qantum Commun. Corp. v. Star Broad., Inc.*,
  473 F. Supp. 2d 1249 (S.D. Fla. 2007) ........................................................22, 23

*Space Sys./Loral v. Martin Marietta Corp.*,
  1995 WL 686369 (N.D. Cal. Nov. 15, 1995) .....................................................22

*Troudt v. Oracle Corp.*,
  369 F. Supp. 3d 1134 (D. Colo. 2019).................................................................12

*United States v. Dunnigan*,
  507 U.S. 87 (1993)..............................................................................................18

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ..........................................................................11

*United States v. Gardner*,
  2012 WL 6680395 (D. Utah Dec. 21, 2012) ......................................................12

*Watson v. Edelen*,
  76 F. Supp. 3d 1332 (N.D. Fla. 2015) ................................................................21

## RULES

Fed. R. Civ. P. 702 .........................................................................................4, 10, 24

## INTRODUCTION

The touchstone of admissible expert testimony is reliability: Reliable qualifications and reliable methods employed in a reliable manner. That is a problem for Alliance, because its purported expert computer forensic examiner Mark Lanterman is not reliable.

First, Lanterman has not disclosed any reliable methods employed in arriving at his opinions—or any methods at all, for that matter. Instead, he simply offers vague, general descriptions of some forms of data he supposedly reviewed, without explaining how he found, accessed, or performed any analysis of the data. Then he gives his final conclusions about emailing and file-copying activity that supposedly occurred on Defendants Adams's and Williams's Alliance laptops. Lanterman's failure to describe his methods was no innocent mistake or oversight; at his deposition, he expressly refused to answer questions about his methodology, which he considers proprietary, stating: "█████████████████████████████ █████████████████████."

Second, Lanterman appears to have falsified his college attendance and degrees, then committed perjury in sticking to his lie. Lanterman claims to have attended the now-closed Upsala College, but transcript records, commencement programs, and yearbooks reflect that he did not. Yet Lanterman repeatedly insisted under oath that █████████████████, while at the same time refusing to answer

questions about biographical information that might corroborate his claimed attendance at the school. Most shockingly, in the immediate aftermath of his deposition, Lanterman apparently traveled from his home in Minnesota to suburban Philadelphia to seize decades-old public records of his prior employment as a police officer, obstructing efforts to investigate his murky past.

For these reasons, and the additional reasons described below, the Court should issue an order striking Lanterman's expert report and excluding him from testifying and offering any opinions in this matter, including in connection with summary judgment briefing. Although for the reasons explained in Laundrylux's Summary Judgment motion (filed concurrently herewith), Alliance cannot prevail on liability or damages in any event, its case is further doomed because it should not be permitted to rely on Lanterman's opinions in arguing a summary judgment motion of its own, or in opposing Laundrylux's motion.

## BACKGROUND

On June 21, 2024, Plaintiff Alliance disclosed the Expert Declaration of Mark Lanterman. *See* Ex. 1.[1] Lanterman claims to be an expert computer forensic investigator, and his declaration purported to offer opinions about email and file-

---

[1] All "Ex." citations herein refer to the Exhibits to the Declaration of David Watnick in Support of Defendants' Motion to Strike Expert Declaration of Mark Lanterman and Exclude Lanterman's Testimony ("Watnick Decl.") filed concurrently herewith.

copying activity on the Alliance laptops assigned to Defendants Trudy Adams and Clay Williams in the weeks and months before they department Alliance and began working for Defendant Laundrylux. *See id.* ¶¶ 1–2. According to Lanterman, several emails had been sent from Adams's and Williams's Alliance email accounts to personal email accounts, and copies in a personal folder on Williams's laptop had likely been copied onto a USB drive. *See id.* ¶¶ 22–24.

On January 10, 2025, after Williams located a USB drive requested in discovery by Alliance, and produced a forensic image of that drive, Alliance disclosed the Amended Expert Declaration of Mark Lanterman. *See* Ex. 2. The Amended Declaration (hereafter simply the "declaration" or "Lanterman Decl.") largely replicates Lanterman's original report, but adds a few paragraphs ostensibly based on Lanterman's examination of that USB image, including that it was the same USB that had been attached to Williams's laptop, and that the "vast majority" of files on the USB match the files in the personal folder on Williams's Alliance laptop. Lanterman Decl. ¶¶ 52–57.[2]

On February 11, 2025, counsel for Laundrylux took Lanterman's deposition, under oath, by Zoom. *See* Ex. 3.

---

[2] All citations to the "Lanterman Decl." herein refer to the January 10, 2025, Amended Declaration.

## LEGAL STANDARD

This Court serves as a gatekeeper to permit only reliable expert testimony and to screen out "speculative [and] unreliable expert testimony." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Before permitting an expert to testify in a matter, this Court must apply Federal Rule of Civil Procedure 702 and determine by a preponderance of the evidence that:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998); *see also* Fed. R. Civ. P. 702.

## ARGUMENT

**I.  Lanterman's Opinions Must Be Excluded Because They Consist Only of Conclusions and Are Not Based on Discernable Methodology.**

In exercising its gatekeeping function with respect to expert testimony, "a court should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). "As gatekeeper for the expert evidence presented to the jury, the

judge must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (citation and internal quotation marks omitted). And in determining whether an expert witness appropriately employed a reliable methodology, *Daubert* instructs a court to consider a variety of factors, including:

- "whether the theory or technique at issue can be (and has been) tested";

- "whether it has been subjected to peer review and publication";

- "the known or potential rate of error of the technique, as well as the "existence and maintenance of standards controlling its operation"; and

- "the degree to which the relevant scientific community accepts the theory or technique as reliable."

*Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1338 (S.D. Fla. 1999) (cleaned up) (quoting *Daubert*, 509 U.S. 593–94) (subsequent history omitted). Lanterman's opinion flunks this basic test, because he has refused to describe any methodological process that can even be assessed under this rubric.

At its core, Lanterman's declaration consists of six opinions, supposedly based on his "analysis" of Ms. Adams's and Mr. Williams's laptop computers and an image of Mr. Williams' USB drive. Yet Lanterman does not disclose any methodology—let alone any reliable, accepted methodology—that he employed in reaching these conclusions. To the contrary, each of Lanterman's opinions is a bare

conclusion supported (if at all) only by Lanterman's say-so about information he supposedly analyzed, with no explanation of how such analysis was performed, i.e., what computer forensics methodology, if any, Lanterman actually employed.

Specifically, Lanterman opines:

1. That Ms. Adams sent several emails from her Alliance email account to the address trudy [at] blueeggconsult [dot] com between January 5 and May 19, 2023. Lanterman Decl. ¶ 31.

   ➤ This finding is purportedly "[b]ased on the content" of an "email container file[]" Lanterman "identified [as] associated with data from Adams' Alliance email accounts." *Id.* Lanterman does not say how or where he found this container file, or how he associated it with Adams's email accounts. *Id.* ¶¶ 29–31. Nor does he offer any description of its purported "content," or how such content allowed him to draw any conclusions about activity on Adams's email accounts. *Id.*

   ➤ Lanterman's report provides no basis, whatsoever, for his assertion that Ms. Adams herself was responsible for any of this activity. *Id.*

2. That 18 of these emails were deleted from Adams's Alliance email account but purportedly recovered by Lanterman and provided to Alliance's counsel. *Id.* ¶ 32.

   ➤ Lanterman's declaration provides no information on how he identified these emails, how he determined they had been deleted, or how he recovered them. *Id.* ¶¶ 32–35.

3. That on May 18, 2023, Defendant Adams attached a USB drive to her laptop. *Id.* ¶ 39.

   ➤ Lanterman asserts that the "Windows operating system records" when a device is attached, the model of the device, and the serial number of the device. *Id.* ¶¶ 38–39. Yet he provides no description of how he found this data, accessed it, and interpreted it to arrive at his conclusion. *Id.*

4. That eight emails were sent from Mr. Williams's Alliance email account to the address jclaywilliams1 [at] gmail [dot] com between June 28 and July 13, 2023. *Id.* ¶¶ 41–43.

  ➢ Lanterman gives no description of how he arrived at this conclusion other than stating: "Like Defendant Adams, Defendant Williams' Alliance-issued laptop also contains email data[.]" *Id.* ¶ 42.

  ➢ Lanterman's report provides no basis, whatsoever, for his assertion that Mr. Williams himself was responsible for any of this activity. *Id.* ¶¶ 41–43.

5. That Mr. Williams copied 3,712 files onto a personal folder on his Alliance laptop to a USB drive on July 10, 2023. *Id.* ¶¶ 48–50.

  ➢ Lanterman states that "Windows records information sufficient to identify when USB drives are attached to a computer" and that "Microsoft Windows may also be configured to track the 'accessed' time of files." *Id.* ¶ 49. But again, he offers no description of how he found, accessed, or interpreted any such records to arrive at his conclusion. *Id.* ¶¶ 48–50.

  ➢ Lanterman's report provides no basis, whatsoever, for his assertion that Mr. Williams himself was responsible for any of this activity. *Id.*

6. That the USB drive produced by Mr. Williams is the same USB drive attached to his laptop on July 10, 2023, and the "vast majority" of the files on the USB drive match the files in the personal folder on Mr. William's Alliance laptop. *Id.* ¶¶ 52–55.

  ➢ Lanterman asserts that the USB drive Williams produced had the same serial number "associated with the USB drive that was attached to Defendant Williams' Alliance-issued laptop on July 10, 2023." *Id.* ¶ 53. He does not explain how he located, identified, accessed, or compared these purported serial numbers. *Id.*

  ➢ Lanterman's assertion that the "vast majority" of the files on the USB drive match the files in the personal folder on Mr. Williams's Alliance laptop is apparently based on his "compar[ing] the hash values of the files on Defendant Williams' Alliance issued laptop with the hash values of the files from the USB drive." *Id.* ¶ 54. He does not explain how he located, identified, accessed, or compared these purported hash

values. *Id.* He also does not disclose any comparison indicating which, if any, files were actually common to Williams's laptop and USB drive; he simply asserts the "vast majority" were the same. *Id.*

In short, Lanterman says nothing about his computer forensic *methods*, i.e., the process one would have to perform to arrive at Lanterman's *conclusions* and identify and analyze the data Lanterman claims to have reviewed. *See Allapattah Servs., Inc.*, 61 F. Supp. 2d at 1338. This failure to disclose any methods was not the result of oversight and cannot be corrected in Lanterman's testimony. To the contrary, Lanterman apparently considers his methodology proprietary, and he affirmatively *refused* to discuss his methods during his deposition, first with respect to recovery of deleted emails, and then as to his entire report:



. . .



. . .



Ex. 3 at 214:4–17; 215:5–15; 219:24–220:12 (emphasis added).

Under Federal Rule of Civil Procedure 702 and the *Daubert* doctrine, an expert's reliable use of accepted methods is the *sine qua non* of admissibility. Unless Lanterman discloses his methodology, there is no way to determine whether the data and information he supposedly reviewed even corresponds to the activities he describes in his opinions. Thus, Lanterman's refusal to disclose his methods, and his reliance instead on his *ipse dixit* conclusions, is fundamentally inadequate to get past this Court's gatekeeping function, and his testimony *must* be excluded as a matter of law. *See MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 WL

2733512, at *9 (11th Cir. Mar. 31, 2023) (affirming trial court's exclusion where the expert provided only "his word and own *ipse dixit*" and noting that "the trial court's gatekeeping function requires more than simply taking the expert's word for it" (internal quotation marks omitted) (citation omitted)); *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1129-30 (11th Cir. 2014) (affirming district court's exclusion of expert testimony where the expert claimed that "he reached his conclusion based on the scientific method" but did not further explain "how he tested his hypothesis to support his conclusions"); *United States v. Frazier*, 387 F.3d 1244, 1265 (11th Cir. 2004) (affirming district court's exclusion of expert testimony where the district court could not tell "whether [the expert's] opinions had been subjected to peer review or, even, the percentage of cases in which his opinion had been erroneous" because the expert did not sufficiently identify the methodology supporting his conclusions).

Numerous other courts have reached the same result in similar circumstances. For instance, in *FedEx Ground Package System, Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 223–24 (W.D. Pa. 2010), the Court excluded the opinion of a computer science expert seeking to offer testimony about similarities between two computer software programs in an action for copyright and trade secrets infringement. The expert opined that, based on his review, the allegedly infringing program reproduced copyrighted records in the allegedly infringed program, and

"copied or otherwise used the data structures" in the allegedly infringed program. *Id.* at 219. The Court held that the proffered opinion could not survive *Daubert* because the witness "fail[ed] to set forth any reasoned methodology employed in forming his opinions," and it was not enough to simply provide conclusions about his comparison. *Id.* at 223–24. The same is true here. Lanterman has disclosed that he performed an analysis and arrived at conclusions, but offers no description of the process he used to perform that analysis.

Similarly, in *United States v. Gardner*, No. 2:10-CR-551-TC, 2012 WL 6680395, at *5 (D. Utah Dec. 21, 2012), the court excluded most opinions of a purported forensics expert. In particular, the court excluded an opinion that anyone who accessed a web browser on the defendant's computer could access the defendant's email account, finding that the expert had not described any methodology behind his opinion; the expert "provided no factual basis for such a conclusion or any reason for the court to believe that . . . he can explain why he reached this conclusion." *Id.*

Finally, Lanterman's refusal to describe his purportedly proprietary methods echoes *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1139 (D. Colo. 2019). There, the proffered expert on fiduciary duties offered an opinion that fees assessed in the administration of a 401(k) plan were excessive. But he "failed to disclose [his] process" and "claimed either that he did not recall specific facts or data supporting

his opinions . . . *or that confidentiality agreements with [his former employer] prevented him from making such disclosures*." *Id.* (emphasis added). The Court therefore excluded his opinion for lacking a reliable methodology. *See id.*

As a matter of law, Lanterman's methodology-free opinion must be excluded.

## II. Lanterman Appears to Have Falsified His Qualifications, Repeatedly Perjured Himself in His Deposition, and Spoliated Evidence About His Background.

In his expert declaration, Lanterman swears under penalty of perjury that he "graduated from Upsala College with both a Bachelor of Science and a Master's degree in computer science." Lanterman Decl. ¶ 6. The resume attached to his declaration asserts the same. Lanterman Decl. Ex. A. The first hint that he may be lying is that Lanterman's declaration and resume do not disclose the *dates* on which he purportedly received those degrees, but in his deposition he stated ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮. Ex. 3 at 28:20–29:2. Yet in sworn submissions in other matters, Lanterman has asserted he received his degrees in 1988 and 1990. *See, e.g.*, Affidavit of Mark Lanterman at 10, *Zuniga Escamilla v. SMS Holdings Corp.*, No. 9-cv-02120-ADM-JSM (D. Minn. Aug. 24, 2010), Dkt. 175. At the risk of stating the obvious, one should *know* when they graduated from college. Either way, none of this is true, and Lanterman appears to have perjured himself in his deposition, perpetuating lies about his credentials.

## A.    Lanterman Admits He Has No Evidence that He Attended Upsala College.

To begin with, there is no evidence beyond Lanterman's say-so that he even attended Upsala College, ██████████████████████:

Ex. 3 at 39:23–25; 41:20–42:3; 47:18–24.

Lanterman's dearth of evidence cannot be chalked up to lack of notice. Far in advance of Lanterman's deposition Laundrylux served discovery requests for documents sufficient to show that Lanterman actually earned his purported degrees

from Upsala College. Ex. 4 at 2. Alliance responded that Lanterman would produce such documents in his possession. *Id.* But when Alliance notified Lanterman of the requests, he apparently told Alliance that such evidence "," and he testified in his deposition that he "█████████████████████████ ████████████. Ex. 3 at 54:22–55:8. In his deposition, Lanterman claimed that ████████████████████████████████████████████ █████. *Id.* at 33:1-13. When asked whether, in order to prove his claimed credentials, he would make further efforts to locate his purported transcripts or other evidence, Lanterman said "███████████████████████████████ ███████████████████" *Id.* at 64:21–65:2.

## B. Overwhelming Evidence Demonstrates Lanterman Did Not Attend or Graduate from Upsala College.

Worse than Lanterman's lack of evidence of attending Upsala College, there is overwhelming evidence that he did *not* attend Upsala College or earn any degrees there. Upsala College was located in East Orange, New Jersey before permanently closing in 1995. Ex 5. The closing followed years of plummeting enrollment, snowballing debt, and the school's loss of accreditation. *See id.*; *see also* Ex. 6. As a result of the closure, Upsala's student transcripts are now preserved by the Office of the Registrar at New Jersey's Felician University. Ex. 7.

When counsel for Laundrylux contacted the Felician University registrar's office to inquire about Lanterman's purported transcripts, the office reported it had

no transcripts for Lanterman: "After multiple attempts to find this file, we have not been able to locate this students [sic] transcript." Ex. 8.[3]

 In his deposition, Lanterman swore under oath that ███████████ ██████████████████████████████████████████████████████████. Ex. 3 at 29:17–31:4. That there are no transcripts memorializing his attendance overwhelmingly demonstrates that he did not attend, or graduate from, Upsala College. Yet that is only the tip of the iceberg.

 Counsel for Laundrylux examined Upsala College yearbooks for the academic years ending in 1987, 1988, 1989, and 1990, all maintained at the East Orange Public Library. Lanterman is not listed among the graduating class in *any* of the four years. Exs. 10–13. Indeed, *his name does not appear at all* in any of the four yearbooks. *Id.*

 That's not all. Counsel for Laundrylux also examined the Upsala College commencement programs for the academic years ending in 1987, 1988, 1989, and 1990, all maintained at the Swenson Swedish Immigration Research Center at Augustana College in Rock Island, Illinois. Exs. 14–17. The commencement programs list each year's graduates by degree type, e.g., Bachelor of Arts, Bachelor of Science, Master of Science. *Id.* Lanterman is not listed among the graduates in

---

[3] Lanterman testified ████████████████████, so there is no possibility the transcripts are maintained under a different name. Ex. 3 at 7:19–25.

any of the years. *Id.* The evidence is unambiguous: Mark Lanterman never earned any degrees from Upsala College but continues to assert falsely—under oath—that he did.

And although Lanterman swore under oath that ███████████████████████ ████████████████████████████████████████████, there is irrefutable evidence—and Lanterman's own sworn testimony in another matter— that he was actually a student at the University of Minnesota in the 1985–86 academic year. Ex. 18 at 4; Ex. 19 at 8:5–15.

### C. Lanterman Appears to Have Repeatedly Perjured Himself, Lying Under Oath About Graduating from Upsala College.

In his deposition, after being confronted with the fact that Felician University had no Upsala transcripts for him, Lanterman emphatically and repeatedly insisted that ████████████████████████. *See, e.g.*, Ex. 3 at 42:12–13 ("█ ████████████████████████████"). Yet when asked if he could *name a single classmate* with whom he attended Upsala in his alleged six years as a full-time student, Lanterman ████████████████—a conspicuous failing Lanterman incredibly ████████████████████. *Id.* at 269:17–20.

Then, when asked to give the name of those (████████████████) ████████, Lanterman outright refused. *Id.* at 269:21–270:19. And when asked to

give just the *address* at which he purportedly lived while attending Upsala College,

he again outright refused:



█████████████████████████████████████████

████████████████████████████

*Id.* at 269:17–270:20; *see also id.* at 33:17–34:17 (███████████████████

████████████████████████████████).

In other words, when asked to give simple biographical information that might corroborate his claimed attendance at Upsala College, Lanterman was unable and unwilling to do so—because there is none. Again, anyone should be able to name *at least one classmate* with whom they studied at a college they purportedly attended for six years.

The only reasonable conclusion is that Lanterman's sworn statements about attending and graduating from Upsala College were perjured. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (perjury occurs when a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory").[4]

---

[4] Importantly, his purported college degrees are not the only thing Lanterman has lied about under oath or deceptively sought to cover up through further false testimony. For instance, in a fee dispute in *Afremov v. Lanterman*, the court found that Lanterman's testimony was not credible, and that he had given false testimony in the underlying federal criminal case. *Lanterman v. Afremov*, No. 27-CV-12-22089, 2014 WL 3579827, at *9-10 (Minn. Dist. Ct. July 17, 2014) (noting that another witness "credibly testified that Lanterman's reputation for integrity is highly questionable and Lanterman's reputation among law firms raise serious questions about his billing practices" and concluding that "billing for computer run time is a fiction that Lanterman used to avoid the problems *created by his false*

### D. Lanterman Appears to Be Spoliating Evidence of His Background.

As if Lanterman's perjured testimony were not bad enough, there's a Hollywood twist illustrating the extraordinary lengths to which Lanterman will go to obfuscate his true background—and fabricate a new one.

Although it is obvious Lanterman did not attend Upsala College, it is not clear where he actually was during the ██ years he supposedly attended (████████ or 1990). Lanterman testified that ████████████████████████████████████████ ██████████████████████████████████████—a position curiously omitted from his resume. *See* Lanterman Decl. Ex. A. To further investigate Lanterman's qualifications and attempt to shed light on his whereabouts and activities at the time he claims he attended Upsala, Laundrylux's counsel reached out to the Springfield Township Police Department to inquire about Lanterman's employment records. *See* Watnick Decl. ¶ 24. The Police Department responded with a story that would be almost impossible to believe if it was not corroborated by Lanterman's own email communications.

---

*testimony in federal court* that he had 11 people working full time 24 hours a day in shifts on the Afremov project for a total of 1,500 human work hours. To explain away the fact that there were not enough people working on the project to come anywhere close to account for an $800,000 bill, Lanterman later unbelievably testified that the hours were both human and computer run time." (emphasis added)). The decision in *Afremov* was later reversed on other grounds, but the findings about Lanterman's credibility were not disturbed. *Lanterman v. Afremov*, No. A15-0729, 2016 WL 1551602, at *1 (Minn. Ct. App. Apr. 18, 2016).

Lanterman was deposed on February 11, from his home in Minnesota. Ex. 3 at 9:19–10:2. On February 12, out of the blue, Lanterman emailed the Springfield Township Police Department, writing: "I have a quick question regarding my personnel jacket [i.e., file]. I assume it has likely been destroyed per the city's document retention policy. Would you mind confirming whether that is the case?" Ex. 20 at 3. The Chief of Police responded: "[W]e still have your personnel file, in fact, we just made our list of files not to retain, but we have always maintained files of employees who retired/resigned." *Id.* at 2.

Lanterman wrote back on February 13, but he did not have any questions about his file, or whether it reflected his purported attendance at Upsala College. Instead, he asked to see it *in person*: "Would it be possible for me to stop by the station tomorrow to see it?" *Id.* The Chief agreed to meet Lanterman on February 14. *Id.* at 1–2.

On February 14, just three days after the deposition at which he was challenged about his apparently falsified credentials, Lanterman—*who lives in Minnesota*—walked into the suburban *Philadelphia* police department, asking to see his old personnel file, and telling a tale of woe: that he had been diagnosed with a grave heart condition and been told to "get his affairs in order," and that he wanted his old police personnel file to show his family about his early career. Watnick Decl.

¶ 24. Lanterman said he needed to catch a flight back to Minnesota, then left the department with his file, promising to return it. *Id.*

To date, despite requests from the Chief of Police, *Lanterman has not returned his personnel file*—thereby preventing counsel from corroborating Lanterman's claims about when he worked in the Springfield Township Police Department. Watnick Decl. ¶ 25 & Ex. 21. It is *shocking* that an expert from Minnesota would *travel to suburban Philadelphia* and abscond with his decades-old personnel file to *obscure his background*. That appears to be the worst and most egregious form of spoliation, and the deception alone is reason enough to exclude Lanterman and consider sanctions. *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("[S]poliation is defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." (citation omitted)).

## E. Lanterman Should Be Excluded for Perjury, Spoliation, and Obstructive Conduct.

The Court has inherent power to remedy this perjury, spoliation, and obstructive conduct by forbidding Lanterman from offering testimony in this matter. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (a court has inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process"). "The inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence," *Qantum Commc'ns. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007), and federal courts often

use their inherent power to exclude expert witnesses for less abusive conduct, *see, e.g.*, *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *1 (W.D.N.Y. Dec. 4, 2003) (exercising inherent power to exclude expert witness from testifying against former employer); *Space Sys./Loral v. Martin Marietta Corp.*, No. CIV. 95-20122 SW, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995) (same).

Such relief is particularly appropriate here, as Lanterman's perjury not only abuses the judicial processes and obfuscates his purported expert qualifications, but accentuates Lanterman's failure to describe what methods he used in arriving at his opinions. *See supra* Section I.

Lanterman refused to testify in this matter about his "methods or techniques or software," which he claimed to be proprietary. *See supra* Section I. Yet a 2006 *Minneapolis Star Tribune* profile that quotes Lanterman extensively reports that "[t]he software that Lanterman uses as an essential element of his electronic detective work is an enhanced version of a search program *he wrote for one of his college classes as a computer science major*." Ex. 9 at 2 (emphasis added). It continues: "The software, which Lanterman views as more comprehensive than commercially available programs, not only allows him to recover deleted documents, but also to track user activity on a specific time line." *Id.*

Thus, Lanterman's secret methods apparently involve bespoke software that he claims to have developed in college, yet every indication is that he is lying about his college attendance. As a result, Lanterman's perjury materially infects both his purported qualifications and his methods, meaning he cannot satisfy either of the first two criteria of expert admissibility. *See Harcros Chems., Inc.*, 158 F.3d at 562.

Lanterman's spoliation of evidence reinforces this result. "Sanctions for spoliation of evidence include . . . exclusion of expert testimony," *Oil Equip. Co. v. Mod. Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016) (unpublished); *see also Qantum Commc'ns. Corp.*, 473 F. Supp. 2d at 1269 (court has inherent power to punish destruction of evidence), and courts in this Circuit often issue such a penalty when expert witnesses fail to preserve relevant evidence, *see, e.g.*, *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, 843 F. Supp. 2d 1318, 1320 (N.D. Ga. 2011); *Nat'l Grange Mut. Ins. Co. v. Hearth & Home, Inc.*, No. 2:06-CV-54-WCO, 2006 WL 5157694, at *7 (N.D. Ga. Dec. 19, 2006).

Here, such a sanction is particularly warranted, as Lanterman appears to have embarked on an extraordinary, unprecedented, and bad-faith campaign to suppress harmful information material to his purported qualifications as an expert computer forensics examiner and to his perjured testimony about those qualifications. *See AZ55S, LLC v. Flinsco.com, LLC*, No. 22-CV-61658, 2023 WL 4564631, at *2 (S.D. Fla. June 30, 2023) (in considering spoliation sanctions, the Court should consider

-24-

"whether the spoliating party acted in bad faith; and . . . the potential for abuse if sanctions are not imposed"), *report and recommendation adopted*, No. 22-61658-CV, 2023 WL 4561628 (S.D. Fla. July 17, 2023).

## CONCLUSION

Rare is the case—perhaps once in a lifetime—where an expert not only lies about his background but goes to such lengths to cover up the lies and destroy evidence along the way. Of course, under Rule 702, the Court must strike Mark Lanterman's declarations and exclude him from offering any opinions in this matter, including in connection with concurrent summary judgment briefing.

And under the Court's inherent authority, it should also consider sanctions against Alliance for Lanterman's refusal to engage in discovery, and for his affirmative steps to frustrate discovery by suppressing and possibly destroying evidence.

Dated:  March 14, 2025

/s/ David A. Perez
David A. Perez (admitted pro hac vice)
Evelyn Y. Pang (admitted pro hac vice)
Shireen Lankarani (admitted pro hac vice)
DPerez@perkinscoie.com
EPang@perkinscoie.com
SLankarani@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:  +1.206.359.8000
Facsimile:  +1.206.359.9000

/s/ Beth-Ann E. Krimsky
Beth-Ann E. Krimsky
Florida Bar No. 968412
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-2427
Fax: (954) 333-4027

*Attorneys for Defendant Autarkic
Holdings, Inc. d/b/a Laundrylux*

/s/ Jura C. Zibas
Jura C. Zibas
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
2063 Main Street, Suite 100
Sarasota, FL 34237
Telephone:  (941.866.8561
Facsimile:  941.210.5979
Email: jura.zibas@wilsonelser.com

*Attorneys for Trudy Adams and John
"Clay" Williams*

## WORD COUNT CERTIFICATION

Defendants' Memorandum of Law contains 5925 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 8,000-word limit in Local Rule 7.1(F).

Dated:  March 14, 2025

*/s/ David A. Perez*

David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:  +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*