**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CBIZ, INC., *et al.*, | ) | CASE NO. 1:24-cv-01027-JPC |
| | ) | |
| Plaintiffs, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JONATHAN D. |
| | ) | GREENBERG |
| GREGORY J. CRYAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

---

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iv

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................2

      A.    Procedural History ......................................................................................2

            1.    Defendants' race to the courthouse and file Georgia Action. ......................2

            2.    The Defendants' Counterclaim and Third-Party Complaint. .....................3

      B.    Facts material to Counterclaim and Third-Party Complaint ...................................4

            1.    The Defendants agreed that Ohio law would apply to their claims and that venue would be in Cuyahoga County, Ohio. ...............................4

            2.    Bowman created false invoices outside of CBIZ's accounting system in violation of CBIZ policies. ........................................5

            3.    Haynes uploaded thousands of CBIZ documents to a personal DropBox account in violation of CBIZ policies. .................................8

      C.    CBIZ's and Gill's statements regarding the terminations of Bowman and Haynes and the suspension of Cryan ........................................8

      D.    CBIZ paid the Individual Defendants all commissions owed ..............................10

III.   LAW AND ARGUMENT ......................................................................................11

      A.    Counts II, III, and IV fail as a matter of law because Defendants' Georgia statutory claims are barred by the choice of law clauses in the employment agreements. .......................................................11

      B.    Even if not barred by the choice of law provisions, Defendants' claims for libel, slander, and Uniform Deceptive Trade Practices fail because the alleged statements are either true or not defamatory. .......................................13

            1.    The statements about whether Cryan was still employed at CBIZ are not defamatory. ....................................................14

            2.    Statements about the termination of Bowman and the suspension of Cryan are true. ......................................................15

      C.    Cryan's, Bowman's, and Haynes's claims under the Georgia Deceptive Trade Practices Act also fail because all statements are true. ...............................20

      D.    Defendants' breach of contract claims for unpaid commissions are subject to summary judgment. ....................................................20

            1.    Cryan, Bowman, and Haynes were paid all commissions due and owing to them. ....................................................20

            2.    Leek, McCoun, and Fischer cannot support their claims that they are owed commissions. ....................................................22

     E.     Cryan's, Bowman's, and Haynes' claim for breach of duty of good faith and fair dealing fails as a matter of law because it cannot be a stand-alone claim..........................................................................................................24

     F.     Defendants' unjust enrichment claim fails because an express contract covers the same subject...............................................................................24

IV.    CONCLUSION.................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelman's Truck Parts Corp. v. Jones Transport*,
  797 F. App'x 997 (6th Cir. 2020) .........................................................................12, 13

*Banek Inc. v. Yogurt Ventures U.S.A.*,
  Inc., 6 F.3d 357, 363 (6th Cir. 1993) ...................................................................12, 13

*CajunLand Pizza, LLC v. Marco's Franchising, LLC*,
  513 F. Supp. 3d 801 (N.D. Ohio 2021)...........................................................................13

*Cook v. Ohio Nat'l Life Ins. Co.*,
  961 F.3d 850 (6th Cir. 2020) .........................................................................................24

*Duff v. Centene Corp.*,
  565 F. Supp. 3d 1004 (S.D. Ohio 2021) .........................................................................20

*Jaillett v. Georgia Television Co.*,
  238 Ga. App. 885, 520 S.E.2d 721 (1999).......................................................................15

*Jesa Enterprises Ltd. v. Thermoflex Corp.*,
  268 F. Supp. 3d 968 (E.D. Mich. 2017).........................................................................22

*Lucarell v. Nationwide Mut. Ins. Co.*,
  152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458 .....................................................24

*Moses v. Business Card Exp., Inc.*,
  929 F.2d 1131 (6th Cir. 1991) ...................................................................................12, 13

*North Atlanta Golf Operations, LLC v. Ward*,
  363 Ga.App. 259 (2022) .................................................................................................14

*Smith v. DiFrancesco*,
  341 Ga. App. 786, 802 S.E.2d 69 (2017)........................................................................14

*StopLoss Specialists, LLC v. VeriClaim, Inc.*,
  340 F. Supp. 3d 1334 (N.D. Ga. 2018) ...........................................................................15

*Williams v. Trust Co. of Georgia*,
  140 Ga.App. 49 (1976) ...................................................................................................14

**Statutes**

Georgia Uniform Deceptive Trade Practices Act O.C.G.A. §10-1-370, *et seq.*...........1, 2, 4, 11, 20

North Carolina's Unfair and Deceptive Trade Practices Act.........................................................12

O.C.G.A. § 9-4-2..............................................................................................................2, 11

O.C.G.A. § 51-5-1....................................................................................................2, 4, 11, 14

O.C.G.A. § 51-5-4.........................................................................................................2, 4, 11

**Other Authorities**

Fed. R. Evid. 702 .......................................................................................................................22

## I.      INTRODUCTION

Defendants' Gregory Cryan's, Keith Bowman's, William Haynes's, Matt McCoun's, Phillip Leek's, and Steven Fischer's (collectively "Defendants") Counterclaims and Third Party Complaint ("Counterclaim") were originally filed as a separate action in Georgia state court ("Georgia Action") in an effort to avoid Ohio Courts and Ohio law. The Georgia Action was nothing more than an effort to win a race to the courthouse in an attempt to evade the Cuyahoga County forum selection clause in Defendants' employment agreements and the Asset Purchase Agreement between Greg Cryan and CBIZ. All of the claims fail as a matter of law. Counts II, III, and IV of the Counterclaim and the Georgia Action claims all exist under statutory Georgia law and thus are legally barred by the choice of law provisions in the Defendants' employment agreements and the Asset Purchase Agreement. The remaining claims lack factual support.

Counts II, III and IV of the Counterclaim are brought by Defendants Cryan, Bowman, and Haynes and assert claims for defamation under statutory Georgia law and a claim under the Georgia Uniform Deceptive Trade Practices Act O.C.G.A. §10-1-370, *et seq*. These three claims generally allege that CBIZ and/or Gill (collectively "CBIZ") disparaged the reputations of Cryan, Bowman, and Haynes when they communicated the facts and circumstances of Bowman's and Haynes's termination and Cryan's suspension. Simply put, the Georgia statutory claims are barred by the Ohio choice of law provision in Defendants' agreements. Even if these claims were to survive the choice of law bar, they are factually unsupported and fail as a matter of law.

Defendants' claim for breach of duty of good faith and fair dealing in Count I of Defendants' Counterclaim also fails because it cannot be a standalone claim under Ohio law. Defendants' unjust enrichment claim in Count XI of Defendants' Counterclaim is also barred because it cannot co-exist with claims for express breach of contract.

Finally, Defendants Cryan, Bowman, Haynes, Leek, Fischer, and McCoun cannot support their breach of contract claims for unpaid commissions (Counts V, VI, VII, VIII, IX, and X). There is no genuine issue of material fact because CBIZ paid the Defendants all commissions to which they were owed.

## II.  STATEMENT OF FACTS

### A.  Procedural History

#### 1.  Defendants' race to the courthouse and file Georgia Action.

On June 12, 2024, Defendants Greg Cryan ("Cryan"), Jerry Keith Bowman ("Bowman"), William Haynes ("Haynes"), Matt McCoun ("McCoun"), Phillip Leek ("Leek"), and Steven Fischer ("Fischer") (collectively "Defendants") filed a lawsuit against CBIZ Insurance Services, Inc. and Mike Gill in Fulton County, Georgia. ("Georgia Action") (ECF No. 16-1, PageID# 490-91.) Defendants brought four claims in the Georgia Action:

- Count I: Cryan, Bowman, and Haynes alleged a violation of the Uniform Deceptive Trade Practice Act under Georgia law, O.C.G.A. § 10-1-370, *et seq*.;

- Count II: Cryan and Bowman alleged claims for libel under Georgia law, O.C.G.A. § 51-5-1;

- Count III: Cryan and Bowman alleged claims for slander under Georgia law, O.C.G.A. § 51-5-4; and

- Count IV: All Defendants sought a declaratory judgment action under Georgia law, O.C.G.A. § 9-4-2 asking the Court determine whether the restrictive covenants are binding and enforceable under Georgia law.

(Georgia Action Complaint, ECF No. 16-1.)

CBIZ Insurance Services, Inc. and Gill removed the Georgia Action to Federal Court and subsequently filed a motion to transfer the case to the Northern District of Ohio pursuant to the

Defendants' jurisdiction and venue provisions in the employment agreements and the Asset Purchase Agreement. (Northern District of Georgia, 1:24-cv-2708, ECF No. 16.) Counts I, II, and III were repled in the Counterclaim. Count IV was not repled but was essentially resolved by the Court's Amended TRO. (Amended Opinion and Temporary Restraining Order, ECF No. 39, PageID# 1322-26.) On January 30, 2025, the Georgia Action was transferred to the Northern District of Ohio and consolidated with the current action. (Order [non-document], January 30, 2025.)

### 2.    The Defendants' Counterclaim and Third-Party Complaint.

On September 10, 2024, Defendants realleged their UDTPA, slander, and libel claims as a Counterclaim/Third-Party Complaint against CBIZ Inc., CBIZ Insurance Services, Inc., and Mike Gill.[1] (ECF No. 56.) Defendants also alleged eight additional claims (collectively the "Counterclaim"). (*Id.*)  Defendants did not, however, reallege their declaratory judgment claim seeking to invalidate the restrictive covenants under Georgia law. (*Id.*)

In total, Defendants' Counterclaim alleges eleven causes of action. (*Id.*) In Count I, Cryan, Bowman, and Haynes allege a claim against CBIZ Inc., CBIZ Insurance Services, Inc., and Gill for breach of the covenant of good faith and fair dealing. (*Id.*, Count I, PageID #1509-10.) Defendants Cryan, Bowman, and Haynes allege:

> 74. **Through its conduct as aforesaid**, CBIZ anticipatorily breached the covenant of good faith and fair dealing implied in every contract, including the Asset Purchase Agreement, Employment Agreement, and Aligned Bonus Agreements in regards to Cryan, and its Employment Agreements with Bowman and Haynes, thus precluding CBIZ from enforcing the restrictive covenants in these agreements.

---

[1] Defendants do not allege claims against Plaintiff CBIZ Benefits & Insurance Services, Inc.

(*Id.*, ¶ 74, Page ID# 1510.) (emphasis added).  Notably, while Defendants define CBIZ to include Gill, Gill is not a party to any of the Agreements entered into between CBIZ and Defendants.

In Count II, Cryan, Bowman, and Haynes allege a claim under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.* (*Id.*, PageID# 1510-11.) This claim generally alleges that "CBIZ and Gill disparaged the character, services, professional abilities, and business of Cryan, Bowman, and Haynes by making false and misleading representations of fact." (*Id.*, PageID# 1510.) Similarly, in Counts III and IV, Defendants Cryan and Bowman allege claims for libel and slander under Georgia law, O.C.G.A. § 51-5-1 and § 51-5-4, alleging that CBIZ and Gill made or published defamatory statements against them. (*Id.*, PageID# 1512-13.) The only statements Defendants allege to be false or defamatory to support their UDTPA, libel, and slander claims are that CBIZ and Gill published statements explaining that Cryan and  Bowman falsified documents, and that all three violated company policy. (*Id.*, PageID# 1506.)

All Defendants allege breach of contract claims against CBIZ alleging that CBIZ withheld commissions that are due and owing to the Individual Defendants. (*Id.*, Counts V (Cryan), VI (Bowman), VII (Haynes), VIII (McCoun), IX (Leek), and X (Fischer), PageID# 1514-18.)

Finally, all Defendants allege claims for unjust enrichment/quantum meruit alleging that CBIZ withheld contractually agreed upon commissions. (*Id.*, Count XI, PageID# 1518.)

### B.    Facts material to Counterclaim and Third-Party Complaint

#### 1.    The Defendants agreed that Ohio law would apply to their claims and that venue would be in Cuyahoga County, Ohio.

All of the Defendants agreed to Employment Agreements with CBIZ. Each of them agreed that any disputes arising out of their agreements would be heard in Cuyahoga County, Ohio and that Ohio law would apply to any claims related to their agreements:

> 14. Applicable Law. The validity, interpretation, construction, performance and enforcement of this Agreement shall be governed

> by and construed in accordance with the laws of the State of Ohio, without regard to principles of conflicts of law. Employee hereby irrevocably submits to the jurisdiction of the courts in the State of Ohio (state or federal), with venue in Cuyahoga County, over any dispute arising out of this Agreement and agrees that all claims in respect of such dispute or proceeding shall be heard and determined in such court. . .

(Cryan Employment Agreement, ECF No. 1-3, PageID #116.)

> This Agreement shall be deemed to have been entered into and shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to principles of conflicts of laws. The parties hereby irrevocably submit to the jurisdiction of the courts in the state of Ohio (state or federal), with venue in Cuyahoga County, over any dispute or proceeding arising out of this Agreement and agree that all claims in respect of such dispute or proceeding shall be heard and determined in such court. The parties to this Agreement hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may have to the venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.

(Employment Agreements of Bowman (ECF No. 1-4), Haynes (ECF No. 1-5), McCoun (ECF No. 1-6), Leek (ECF No. 1-7), and Fischer (ECF No. 1-8).)

### 2. Bowman created false invoices outside of CBIZ's accounting system in violation of CBIZ policies.

In March 2024, Bowman and Cryan obtained permission for CBIZ to advance certain premiums on behalf of a customer that would be repaid in 30 days. (Suzanne Evans Declaration, ¶ 5, ECF No. 108-3, PageID# 3818.) Bowman created correct invoices and then sent them to the customer. (*Id.*)  At the customer's request, Bowman created new invoices which falsely stated that money was due and owing to CBIZ when, in fact, it was not:

> Q. Okay. At the time Exhibit A was sent to the client, you knew this was -- this was going to its finance company?
>
> A. Oh, absolutely.
>
> Q. Okay. The amounts that are shown on the invoice are not due and owing to CBIZ at this time?

A. That's correct.

Q. Okay. CBIZ has not made advances in the amount of $753,000 as of March 26th, correct?

A. Yes, sir. That's correct.

Q. So the invoices that were sent to Penn-Florida, with your knowledge that they were going to Penn-Florida's lender --

A. Yes, sir.

Q. -- do not reflect accurate amounts that were owed to CBIZ, correct?

A. Not amounts that were owed to CBIZ, no.

(TRO Hearing Transcript, 140:5-140:23:5, ECF No. 28, PageID# 897.)

Bowman also admitted that the invoices were created outside of the CBIZ accounting system:

Q. Okay. And the invoices that are Plaintiff's Exhibit A were outside of the accounting system at CBIZ, correct?

A. Yes, sir, that's correct.

Q. And there's four other payments on there that you say are due and owing but are not recorded on the books of CBIZ; is that correct?

A. That's correct.

(TRO Hearing Transcript, 138:10-13, ECF No. 28, PageID# 895.)

Cryan was aware of Bowman's actions surrounding the false invoices. In late March 2024, CBIZ's Controller for the property and casualty group saw that CBIZ had received payments from Penn-Florida's lenders that totaled $585,000 more than the funds advanced by CBIZ on behalf Penn-Florida. (Suzanne Evans Declaration, ¶ 10, ECF No. 108-3, PageID# 3819.) CBIZ's Controller asked Cryan about the overpayments and Cryan advised: "Please leave this amount in the account as they will be billing to offset it for a new Chubb deposit bond that is effective yesterday." (*Id.*, Ex. 1, PageID# 3821.) Bowman provided a different explanation to the CBIZ

Controller: "The premium is financed by Penn Florida. The bank overpaid us an additional installment. Penn needs to have funds to pay Agile next month. I'll confirm Penn's wire information asap." (*Id*. Ex. 2, PageID# 3824.)

By participating in a scheme to create false invoices outside of CBIZ's accounting system to appease a client, Bowman and Cryan violated CBIZ's policies regarding the accuracy of company records:

### Accuracy of Company Records

All information you record or report on our behalf, whether for our purposes or for third parties, must be done accurately and honestly. All of our records (including accounts and financial statements) must be maintained in reasonable and appropriate detail, must be kept in a timely fashion, and must accurately and appropriately reflect our transactions. Falsifying records or keeping unrecorded funds and assets is a severe offense and may result in prosecution and/or loss of employment. When a payment is made, it can only be used for the purpose specified in the supporting document.

Information derived from our records is provided to our stockholders and investors as well as government agencies. Thus, our accounting records must conform not only to our internal control and disclosure procedures but also to generally accepted accounting principles and other laws and regulations, such as those of the Internal Revenue Service and the U.S. Securities and Exchange Commission (the "SEC"). Our public communications and the reports we file with the SEC and other government agencies should contain information that is full, fair, accurate, timely and understandable in light of the circumstances surrounding disclosure.

Our internal and external auditing functions help ensure that our financial books, records and accounts are accurate. Therefore, you should provide our accounting department, internal auditing staff, audit committee and independent public accountants with all pertinent information that they may request. We encourage open lines of communication with our Audit Committee, accountants and auditors and require that all our personnel cooperate with them to the maximum extent possible. It is unlawful for you to fraudulently influence, induce, coerce, manipulate or mislead our independent public accountants for the purpose of making our financial statements misleading.

7

(Tara Campbell Declaration, Ex. 1, ECF No. 108-1, PageID# 3750.)

> **3.      Haynes uploaded thousands of CBIZ documents to a personal DropBox account in violation of CBIZ policies.**

In April 2024, Haynes uploaded thousands of CBIZ documents to a personal DropBox account:

> So I created the Dropbox in October of 2022 and started putting files in it and I just essentially started whatever was in the -- most recently, in the beginning of **April 2024, I took my documents tab, saved them on my laptop and dragged and dropped it over to Dropbox.**

(Haynes's Testimony at TRO Hearing, ECF No. 28, PageID # 960-62.)

Haynes's actions violated CBIZ's Information Technology Policies and Procedures:

> 8.4  Use of cloud storage: Cloud storage solutions must be approved by CBIZ for business use. Client solutions are permitted if documented in the Client's Master Services Agreement, Engagement Letter, Contract, or similar legal instrument including the Client Download Waiver. **Other cloud storage sites (e.g. Google Drive, Dropbox, Box, iCloud, etc.) should not be used for business purposes unless explicitly required with appropriate documentation**.

(John Flesicher Declaration, Ex. 1, ECF No. 108-2, PageID# 3809.)  Haynes did not have authorization from CBIZ to utilize a DropBox account. (*Id*. at ¶ 6, PageID# 3802.)  Indeed, Haynes received multiple warnings of this violation as he was downloading the documents. (*Id*. at ¶ 7.)

> **C.      CBIZ's and Gill's statements regarding the terminations of Bowman and Haynes and the suspension of Cryan**

Following the termination of Bowman and Haynes and the suspension of Cryan, CBIZ sent the following internal emails to individuals who worked with Bowman, Cryan, and Haynes to provide an explanation for the sudden departures:

| Message | |
|---|---|
| From: | Campbell, Tara [Tara.Campbell@CBIZ.com] |
| Sent: | 5/29/2024 1:33:23 PM |
| To: | DL Boca P&C [DLBocaPC@CBIZ.com]; DL West Palm All Employees [DLWestPalmAllEmployees@CBIZ.com]; DL Sarasota All Employees [DLSarasotaAllEmployees@CBIZ.com]; DL Alpharetta [DLAlpharetta@CBIZ.com] |
| CC: | Perlman, Jeff [Jeff.Perlman@cbizBP.com]; Borden, Doug [Doug.Borden@cbizBP.com]; Coleman, Doug [Doug.Coleman@cbizBP.com]; Willetts, Rich [Rich.Willetts@CBIZ.com]; Dolan, Sean [sdolan@CBIZ.com]; Stoltz, Mark A. [mastoltz@CBIZstoltz.com]; Clevenger, Patricia [pClevenger@cbizstoltz.com]; Whipps, Mike [Mike.Whipps@CBIZ.com]; Hage, Erik [ehage@CBIZ.com]; Fiacco, Dave [Dave.Fiacco@CBIZ.com]; Madderom, Tim [Tim.Madderom@CBIZ.com]; Nestel, Lee [lnestel@CBIZ.com]; Consoli, Anthony [AConsoli@CBIZ.com]; Trail, Tosha [Tosha.Trail@cbiz.com]; Newman, Elizabeth [elizabeth.newman@CBIZ.com]; Kouzelos, Michael [MKouzelos@cbiz.com]; Mellard, Nancy [NMellard@CBIZ.com]; Sipple, Leigh Ann [lSipple@CBIZ.com]; Patel, Delilah [delilah.allen@CBIZ.com]; Musick, Doug [DMusick@CBIZ.com]; Chorba, Bill [Bill.Chorba@CBIZ.com]; Martz, Doug [DMartz@CBIZ.com]; Evans, Suzanne [smevans@cbizmeridian.com]; Davis, Marina [Marina.Davis@CBIZ.com]; Robinson, Rhonda [RHRobinson@CBIZ.com]; Smith, Kayla [KaylaR.Smith@CBIZ.com]; Gill, Mike [MGill@CBIZ.com] |
| Subject: | Immediate Changes to Southeast Leadership (Confidential – Sent on Behalf of Mike Gill) |

Importance: High

Dear Team,

I want to inform you of actions taken earlier today that impacts the Southeast Region and the overall P&C business unit.

Effective immediately, Keith Bowman, Executive Vice President, is no longer employed by CBIZ, due to his actions that violated CBIZ policies including the falsification of documents. As required, this matter will be reported to Departments of Insurance for the applicable jurisdictions.

Greg Cryan, Regional President for the Southeast region, is suspended until further notice, due to Greg's awareness of documents being falsified violating CBIZ company policies. This matter will be reported to Departments of Insurance for the applicable jurisdictions.

While we realize this news may feel unsettling, we want you to understand the severity of these incidents and our reporting requirements.

At this time, **Tony Consoli** will serve as interim **President of the Southeast Region**. Tony has been with CBIZ P&C since 2011, serving most recently as our National Practice Leader, specializing in Healthcare and Alternative Risk (Captives). Tony is based in the Sarasota area and will be working closely with me over the next few weeks on a transition plan for the region, given these recent changes in leadership. We will keep the Southeast team apprised of our progress, as appropriate. Any urgent client matters should be directed to your immediate supervisor for handling.

Any communication or outreach from these individuals should be directed to **Tosha Trail, VP of HR.**

We appreciate your understanding and professionalism during this transition. Your dedication to our team and our clients continues to be vitally important.

Should you have any questions, please do not hesitate to reach out.

Best,

(Tara Campbell Declaration, Ex. 2, ECF No. 108-1, PageID# 3796.)

CBIZ sent a similar email regarding Defendant Haynes:

Message

| | |
|---|---|
| From: | Campbell, Tara [Tara.Campbell@CBIZ.com] |
| Sent: | 5/29/2024 1:55:59 PM |
| To: | DL Boca P&C [DLBocaPC@CBIZ.com]; DL West Palm All Employees [DLWestPalmAllEmployees@CBIZ.com]; DL Sarasota All Employees [DLSarasotaAllEmployees@CBIZ.com]; DL Alpharetta [DLAlpharetta@CBIZ.com] |
| CC: | Gill, Mike [MGill@CBIZ.com]; Martz, Doug [DMartz@CBIZ.com]; Trail, Tosha [Tosha.Trail@cbiz.com]; Newman, Elizabeth [elizabeth.newman@CBIZ.com]; Consoli, Anthony [AConsoli@CBIZ.com]; Robinson, Rhonda [RHRobinson@CBIZ.com] |
| Subject: | Will Haynes- Termination (Confidential - Sent on behalf of Mike Gill) |

Dear Team,

I am reaching out to make you aware that effective immediately, **William (Will) Haynes, Account Executive**, is no longer employed by CBIZ due to his actions that violated CBIZ Corporate Data Security policy. Will's accounts will continue to be serviced by <u>Peter Falcone, Account Executive.</u>

Please direct all inquiries about aviation accounts to Peter directly. Peter will be reporting to Tony Consoli effective immediately.

<u>Any communication from Will Haynes should be directed to Tosha Trail, VP of HR (cc'd).</u>

We appreciate your professionalism and support during this transition.

Best,

Mike Gill

**Tara Campbell**
HR Director
CBIZ
Phone: 610-862-2313 Cell: 484-437-7486



1001 Conshohocken State Road, Ste 2-600 | West Conshohocken | PA | 19428

*The information in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.*

CONFIDENTIAL                                                                                           CBIZ_00013882

(*Id*., Ex. 3, PageID# 3799.)

> ### D.  CBIZ paid the Individual Defendants all commissions owed

Once the employment relationships between CBIZ and Defendants ended, CBIZ paid all the commissions due to the Defendants. In that regard, Defendants were only entitled to

commissions received by CBIZ while they are employed. CBIZ calculated and paid all such commissions. (Declaration of Doug Martz, ¶ 8, ECF No. 108-4, PageID# 3828.)

## III.    LAW AND ARGUMENT

### A.    Counts II, III, and IV fail as a matter of law because Defendants' Georgia statutory claims are barred by the choice of law clauses in the employment agreements.

The three claims pled by Defendants Cryan, Bowman and Haynes under Georgia statutory law are barred by the choice of law provisions in their respective Employment Agreements. Defendants Cryan, Bowman, and Haynes allege a claim under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.* Cryan and Bowman allege claims for libel under O.C.G.A. § 51-5-1 and slander under O.C.G.A. § 51-5-4.[2]

Cryan, Bowman, and Haynes all agreed that their Employment Agreements are governed by and construed in accordance with the laws of the State of Ohio. In his Employment Agreement, Cryan agreed:

> 14. Applicable Law. The validity, interpretation, construction, performance and enforcement of this Agreement shall be **governed by and construed in accordance with** the laws of the State of Ohio, without regard to principles of conflicts of law.

(Cryan Employment Agreement, ECF No. 1-3, PageID# 116.) (emphasis added) In their Employment Agreements, Haynes and Bowman agreed:

> This Agreement shall be deemed to have been entered into and shall be **governed by and construed in accordance with** the laws of the State of Ohio, without regard to principles of conflicts of laws.

(Bowman Employment Agreement, ECF No. 1-4, PageID# 128; Haynes Employment Agreement, ECF No. 1-5, PageID# 140.) (emphasis added)

---

[2] To the extent that Individual Defendants still assert their claim for declaratory judgment under O.C.G.A. § 9-4-2, this Court held that Ohio law applied and that the restrictive covenants were likely enforceable. (Amended Opinion and Temporary Restraining Order, ECF No. 39, PageID# 1322-26.)

When parties agree that their contract will be "governed by and construed" in accordance with a particular state's law, such language is sufficiently broad to cover related tort claims. *See, e.g., Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1991) (holding that fraud and misrepresentation claims were covered under "[t]his Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan."); *Adelman's Truck Parts Corp. v. Jones Transport*, 797 F. App'x 997, 1001 (6th Cir. 2020) (holding that unfair and deceptive trade practices claim was covered under "[t]his Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio," because "the clause clearly refers to more than construction of the agreement.").

In *Adelman*, the seller of a truck motor brought a state court declaratory judgment action against the buyer after the buyer sought reimbursement for an allegedly faulty motor. 797 F. App'x 997, 998-99. The buyer filed a counterclaim against the seller for breach of contract and violation of North Carolina's Unfair and Deceptive Trade Practices Act. *Id*. The purchase agreement between the parties included a choice of law clause which stated, "[t]his Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio." *Id*. at 1000. When ruling on a motion for summary judgment, the district court held that the purchase order barred the claim, and the Sixth Circuit agreed. *Id*. The Sixth Circuit relied on *Moses*, 929 F.2d 1131, to hold that the choice of law clause clearly covered more than the construction of the agreement:

> We find no legally significant difference between the choice-of-law clause here and the choice-of-law clause in *Moses*. Here, as there, the clause clearly "refers to more than construction of the agreement; otherwise the first six words would be surplusage." *Id*. at 1139–40. Just as in *Moses*, the choice-of-law clause here governs the agreement and any disputes, whether contractual or tortious, that are directly related to it. *See Banek Inc. v. Yogurt Ventures U.S.A.*, Inc., 6 F.3d 357, 363 (6th Cir. 1993) (holding that a choice-of-law provision was sufficiently broad to cover the plaintiff's claims for fraud and misrepresentation that were "directly related to" the

contract). Because Jones's NC UDTPA claim arose out of and is directly related to the Purchase Agreement, it is barred by the Purchase Agreement's choice-of-law clause.

*Id.*

Cryan's, Bowman's, and Haynes' choice of law provisions contain the same identical operative terms – "governed by and construed in accordance with" – as set forth in *Adelman* and *Moses*, and therefore encompass Defendants' UDTPA, libel, and slander claims because the claims are directly related to the employment relationship. Indeed, Defendants allege that "CBIZ made these statements in the course of their business, vocation or occupation." (Counterclaim, ¶¶ 77-95, ECF No. 56, PageID# 1510-13; Georgia Action Complaint, ECF No. 16-1, PageID # 487-89.)

Because Counts II, III, and IV arise out of and are directly related to the employment relationship between the Defendants and CBIZ, they are barred by the Defendants' Ohio choice of law clause. *See Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1001 (6th Cir. 2020) ("Because Jones's NC UDTPA claim arose out of and is directly related to the Purchase Agreement, it is barred by the Purchase Agreement's choice-of-law clause."); *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1140 (6th Cir. 1991) ("To the extent the plaintiffs based their claims directly on the alleged violations of specified Alabama statutes, without reference to the law of Michigan, they failed to assert a claim upon which relief could be granted. The defendants were entitled to judgment on those claims as a matter of law."); *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 807 (N.D. Ohio 2021) (dismissing plaintiffs' Louisiana statutory tort claims where choice of law provision provided that Ohio law applied to contract). Accordingly, summary judgment should be granted in favor of CBIZ and Mike Gill on Counts II, III, and IV of Defendants' Counterclaim.

**B.      Even if not barred by the choice of law provisions, Defendants' claims for libel, slander, and Uniform Deceptive Trade Practices fail because the alleged statements are either true or not defamatory.**

Even if Cryan, Bowman, and Haynes could bring their claims under Georgia law, the claims still fail because all of the statements Cryan, Haynes, and Bowman rely on in Count II are true or not defamatory. And the statements Cryan and Bowman rely on for their libel and slander claims (Counts III and IV) are true.

To prove a claim sounding in defamation a plaintiff must prove the following four elements: "(1) a **false and defamatory** statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Smith v. DiFrancesco,* 341 Ga. App. 786, 787–88, 802 S.E.2d 69 (2017) (emphasis added).

## 1. The statements about whether Cryan was still employed at CBIZ are not defamatory.

The statements allegedly made by CBIZ and/or Gill about whether Cryan was still employed by CBIZ in May and June of 2024 are not defamatory.

Libel is specifically defined as the "false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." *North Atlanta Golf Operations, LLC v. Ward*, 363 Ga.App. 259 (2022); O.C.G.A. § 51-5-1. Slander, or oral defamation, includes imputing a crime to another, charging someone with having a contagious disorder or being guilty of a debasing act, making charges against another in reference to their trade, office, or profession, or uttering any disparaging words that produce special damage. *Williams v. Trust Co. of Georgia*, 140 Ga.App. 49 (1976); O.C.G.A § 51-5-4. "Although as a general rule the question whether a particular communication is defamatory is for the jury, if the statement is not ambiguous and reasonably can have only one interpretation, the question of defamation is one of law for the court." *StopLoss*

*Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018) (quoting

*Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 441, 425 S.E.2d 676, 678 (1992)).

Here, none of the alleged statements regarding Cryan's employment status are actionable.

> 62. Nevertheless, as late as June 12, 2024, CBIZ was still falsely representing that "Greg [Cryan] is out of the office" when in fact he had been terminated.

> 63. Moreover, as late as June 12, 2024, when asked by a client, "Is Greg still with the company?" CBIZ falsely answered, "Greg is still with the company."

(Counterclaim, ¶¶ 62,62, ECF No. 56, PageID# 1507-08.) Neither of these statements are

defamatory. They do not tend to injure the reputation of Cryan, nor do they expose him to public

hatred, contempt, or ridicule, and they do not make any sort of charges against Cryan. As such,

even if these statements were false, they are not defamatory or disparaging as a matter of law.

### 2. Statements about the termination of Bowman and the suspension of Cryan are true.

Even if Cryan and Bowman could bring claims for libel or slander, they would still fail

because the alleged statements are true. Defamatory statements must be false to be actionable.

"Truth is a complete defense to alleged libel or slander." *StopLoss Specialists, LLC v. VeriClaim,*

*Inc.*, 340 F. Supp. 3d 1334, 1347 (N.D. Ga. 2018). "To be actionable, a communication must be

both false and malicious, and the burden of proving a statement's falsity is on the plaintiff." *Jaillett*

*v. Georgia Television Co.*, 238 Ga. App. 885, 888, 520 S.E.2d 721, 724 (1999).

> a. CBIZ's internal emails regarding Cryan, Bowman, and Haynes were true and accurate.

Defendants allege that "[t]he first known false statement was published internally by CBIZ

at the direction of Gill on May 29, 2024 stating that Cryan and Bowman were no longer with the

company due to 'violations of company policy' and 'falsification of documents.'" (Counterclaim,

¶ 54, ECF No., 56, PageID# 1506). The internal CBIZ email actually states that Bowman was terminated and Cryan was suspended:

| Message | |
|---|---|
| **From:** | Campbell, Tara [Tara.Campbell@CBIZ.com] |
| **Sent:** | 5/29/2024 1:33:23 PM |
| **To:** | DL Boca P&C [DLBocaPC@CBIZ.com]; DL West Palm All Employees [DLWestPalmAllEmployees@CBIZ.com]; DL Sarasota All Employees [DLSarasotaAllEmployees@CBIZ.com]; DL Alpharetta [DLAlpharetta@CBIZ.com] |
| **CC:** | Perlman, Jeff [Jeff.Perlman@cbizBP.com]; Borden, Doug [Doug.Borden@cbizBP.com]; Coleman, Doug [Doug.Coleman@cbizBP.com]; Willetts, Rich [Rich.Willetts@CBIZ.com]; Dolan, Sean [sdolan@CBIZ.com]; Stoltz, Mark A. [mastoltz@CBIZstoltz.com]; Clevenger, Patricia [pClevenger@cbizstoltz.com]; Whipps, Mike [Mike.Whipps@CBIZ.com]; Hage, Erik [ehage@CBIZ.com]; Fiacco, Dave [Dave.Fiacco@CBIZ.com]; Madderom, Tim [Tim.Madderom@CBIZ.com]; Nestel, Lee [lnestel@CBIZ.com]; Consoli, Anthony [AConsoli@CBIZ.com]; Trail, Tosha [Tosha.Trail@cbiz.com]; Newman, Elizabeth [elizabeth.newman@CBIZ.com]; Kouzelos, Michael [MKouzelos@cbiz.com]; Mellard, Nancy [NMellard@CBIZ.com]; Sipple, Leigh Ann [lSipple@CBIZ.com]; Patel, Delilah [delilah.allen@CBIZ.com]; Musick, Doug [DMusick@CBIZ.com]; Chorba, Bill [Bill.Chorba@CBIZ.com]; Martz, Doug [DMartz@CBIZ.com]; Evans, Suzanne [smevans@cbizmeridian.com]; Davis, Marina [Marina.Davis@CBIZ.com]; Robinson, Rhonda [RHRobinson@CBIZ.com]; Smith, Kayla [KaylaR.Smith@CBIZ.com]; Gill, Mike [MGill@CBIZ.com] |
| **Subject:** | Immediate Changes to Southeast Leadership (Confidential – Sent on Behalf of Mike Gill) |

**Importance:** High

Dear Team,

I want to inform you of actions taken earlier today that impacts the Southeast Region and the overall P&C business unit.

Effective immediately, Keith Bowman, Executive Vice President, is no longer employed by CBIZ, due to his actions that violated CBIZ policies including the falsification of documents. As required, this matter will be reported to Departments of Insurance for the applicable jurisdictions.

Greg Cryan, Regional President for the Southeast region, is suspended until further notice, due to Greg's awareness of documents being falsified violating CBIZ company policies. This matter will be reported to Departments of Insurance for the applicable jurisdictions.

While we realize this news may feel unsettling, we want you to understand the severity of these incidents and our reporting requirements.

At this time, **Tony Consoli** will serve as interim **President of the Southeast Region**. Tony has been with CBIZ P&C since 2011, serving most recently as our National Practice Leader, specializing in Healthcare and Alternative Risk (Captives). Tony is based in the Sarasota area and will be working closely with me over the next few weeks on a transition plan for the region, given these recent changes in leadership. We will keep the Southeast team apprised of our progress, as appropriate. Any urgent client matters should be directed to your immediate supervisor for handling.

Any communication or outreach from these individuals should be directed to **Tosha Trail, VP of HR.**

We appreciate your understanding and professionalism during this transition. Your dedication to our team and our clients continues to be vitally important.

Should you have any questions, please do not hesitate to reach out.

Best,

(Tara Campbell Declaration, Ex. 2, ECF No. 108-1, PageID# 3796.)

Everything in this email is true. Cryan was suspended and Bowman was terminated because Bowman created false invoices outside of CBIZ's accounting system with Cryan's

knowledge. (Verified Complaint, ¶ 80, ECF No. 1, PageID# 17.) Bowman admitted that the invoices falsely stated money was due and owing to CBIZ at the TRO hearing:

> Q. Okay. The amounts that are shown on the invoice are not due and owing to CBIZ at this time?
>
> A. That's correct.
>
> Q. Okay. CBIZ has not made advances in the amount of $753,000 as of March 26th, correct?
>
> A. Yes, sir. That's correct.
>
> Q. So the invoices that were sent to Penn-Florida, with your knowledge that they were going to Penn-Florida's lender --
>
> A. Yes, sir.
>
> Q. -- do not reflect accurate amounts that were owed to CBIZ, correct?
>
> A. Not amounts that were owed to CBIZ, no.

(TRO Hearing Transcript, 140:5-140:23:5, ECF No. 28, PageID# 897.)

Bowman also admitted that the invoices were created outside of the CBIZ accounting system:

> Q. Okay. And the invoices that are Plaintiff's Exhibit A were outside of the accounting system at CBIZ, correct?
>
> A. Yes, sir, that's correct.
>
> Q. And there's four other payments on there that you say are due and owing but are not recorded on the books of CBIZ; is that correct?
>
> A. That's correct.

(TRO Hearing Transcript, 138:10-13, ECF No. 28, PageID# 895.)

Cryan was aware of the false invoices. (Suzanne Evans Declaration, Ex. 1, ECF No. 108-3, PageID# 3821.) ("Please leave this amount in the account as they will be billing to offset it for a new Chubb deposit bond that is effective yesterday.").

The creation of these invoices violated CBIZ policy regarding the Accuracy of Company Records:

> All information you record or report on our behalf, whether for our purposes or for third parties, must be done accurately and honestly. All of our records (including accounts and financial statements) must be maintained in reasonable and appropriate detail, must be kept in a timely fashion, and must accurately and appropriately reflect our transactions. Falsifying records or keeping unrecorded funds and assets is a severe offense and may result in prosecution and/or loss of employment. When a payment is made, it can only be used for the purpose specified in the supporting document.

(Tara Campbell Declaration, Ex. 1, ECF No. 108-1, PageID# 3750.)

Thus, as a matter of law, these statements were all true. Bowman's and Cryan's attempts to create an issue of fact by arguing that the numbers balanced on the books of Penn-Florida completely misses the point. CBIZ received $578,000 that did not belong to CBIZ – it did not make an advance in this amount and premiums were not due at that time.

> b.      Even if the statements in The Insurer article could be attributed to CBIZ or Gill, they are true.

Defendants identify the following statement from a June 3, 2024 article published by The Insurer which they allege is false:

> "CBIZ has fired Florida-based EVP Keith Bowman and suspended Southeast regional president Greg Cryan in relation to the alleged falsification of documents and plans to report their behavior to relevant departments of insurance, The Insurer can reveal."

(Counterclaim, ¶ 59.)

There is no genuine issue of material fact with respect as to whether CBIZ sent information to the Insurer – it did not. Defendants all acknowledged in discovery responses on March 31 that they lack sufficient evidence to support their allegation that CBIZ provided any information to the Insurer:

REQUEST FOR ADMISSION NO. 1: Admit that You do not know who provided information to The Insurer for the article, "CBIZ fires Bowman over alleged falsification of documents and suspends Cryan," published on June 3, 2024.

**ANSWER: Defendant Cryan has made a reasonable inquiry, and the information currently known or readily obtainable is insufficient to permit Defendant Cryan to admit or deny Request for Admission No. 1. Defendant Cryan's inquiry will continue, and Defendant Cryan will supplement this response as appropriate.**

(Cryan Answer to Request for Admission, No. 1, ECF No. 108-5, PageID# 3833.)[3]

Because Defendants cannot demonstrate that anyone from CBIZ provided information to the Insurer, there is no genuine dispute of material fact, and CBIZ is entitled to summary judgment as a matter of law.

Even if CBIZ or Gill had sent information to the Insurer, which Defendants admit they cannot show, the statements in The Insurer article are factually correct. As explained above, Cryan and Bowman cannot genuinely dispute that Bowman was terminated and Cryan suspended for issuing false invoices outside of CBIZ's accounting system, which stated that money was due and owing to CBIZ when it was not. CBIZ reported their behavior to the relevant departments of insurance. (Verified Complaint, ¶ 81, ECF No. 1, PageID# 17.) Because the statements are true, it cannot support Cryan's and Bowman's libel or slander claims.

---

[3]Defendant Bowman provided an identical response to the same request for admission: "ANSWER: Defendant Bowman has made a reasonable inquiry, and the information currently known or readily obtainable is insufficient to permit Defendant Bowman to admit or deny Request for Admission No. 1. Defendant Bowman's inquiry will continue, and Defendant Bowman will supplement this response as appropriate." (Bowman Answer to Request for Admission, No. 1. ECF No. 108-7, PageID# 3849.)

C.     **Cryan's, Bowman's, and Haynes's claims under the Georgia Deceptive Trade Practices Act also fail because all statements are true.**

Defendants Cryan and Bowman rely on the same statements identified above to support their Deceptive Trade Practices Act claim, O.C.G.A. § 10-1-370, *et seq.* And, as demonstrated above, the statements are either not actionable or true.

Similarly, all of CBIZ's and Gill's statements regarding the termination of Haynes are true. Haynes was terminated, and he admitted to uploading documents to his personal DropBox account. (TRO Hearing Transcript, ECF No. 28, PageID # 960-63.)  This was in violation of the CBIZ security policy. These facts are not in dispute. Thus, even if Haynes could bring a claim under Georgia statutory law, his deceptive trade practices claim fails as a matter of law.

D.     **Defendants' breach of contract claims for unpaid commissions are subject to summary judgment.**

Defendants Cryan, Bowman, Haynes, Fischer, Leek, and McCoun all allege their own claims for breach of contract alleging that CBIZ[4] failed to pay them commissions. (Counterclaim, Counts V, VI, VII, VIII, IX, and X.) These claims all fail because CBIZ paid the commissions due and owing to Defendants upon their terminations/resignations from CBIZ.

1.     **Cryan, Bowman, and Haynes were paid all commissions due and owing to them.**

The Employment Agreements and CBIZ policy entitle Defendants to commissions, but only if they are employed on the day the actual cash revenue is received by CBIZ:

> 6. The commission compensation paid to Producer pursuant to Sections 3, 4 and 5 above shall be paid to Producer on the fifteenth (15th) of the month following actual cash receipt of the revenue.

---

[4] In the Counterclaim, Defendants define "CBIZ" to include Gill. Gill was not a party to the Employment Agreements between Defendants and CBIZ, and thus, as a matter of law, cannot be held liable for breach of contract. (Employment Agreements, ECF No. 1-3, ECF No. 1-4, ECF No. 1-5, ECF No. 1-6, ECF No. 1-7, ECF No. 1-8.) *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1018 (S.D. Ohio 2021) ("It is generally—but not absolutely—true that non-signatories to a contract cannot be liable for breach of that contract.")

. . .

> 8. All compensation outlined herein does not bind Employer to any employment period or create any relationship with Producer other than as an at-will employee. **Producer shall receive any compensation outlined herein only so long as Producer is employed by Employer**.

(Bowman Employment Agreement, ECF No. 1-4, PageID# 132.) (Emphasis added) Haynes' Employment Agreement is virtually identical. (Haynes Employment Agreement, ECF No. 1-5, PageID# 143) ("Producer shall receive any compensation outlined herein only so long as Producer is employed by Employer.") (Doug Martz Declaration, ECF No. 108-4, PageID# 3828.) ("Upon a Producer's termination of employment, CBIZ pays that Producer a final commission payment based upon the actual cash receipt for the production of insurance policies the Producers have placed up to the date of that Producer's termination.")[5]

CBIZ issued discovery requests to Defendants in order to understand their theory of commissions, but Defendants failed to state what commissions they believe are due to them even as of March 31, 2025:

> INTERROGATORY NO. 4: **Itemize all commissions You claim are owed to You from CBIZ as alleged in paragraph 69** of the Individual Defendants' Counterclaims and Third-Party Complaint, including the amount owed, the customer and carrier, and identify the date on which those commissions became due and owing to You.
>
> ANSWER: Defendant Cryan objects to this interrogatory because discovery is on-going, including review of Plaintiffs' most recent document productions. Defendant Cryan further objects to Interrogatory No. 4 as overly burdensome. Defendant Cryan intends to offer expert testimony to calculate such commissions that are owed to Defendant Cryan from CBIZ. An expert report will be produced in accordance with the Court's Case Management Plan, the Federal Rules of Civil Procedure and Local Rules.

---

[5] Defendants' expert report of John R. Bone acknowledges an understanding that commissions are paid on collections. (ECF No. 109, Ex. 2, p. 55.)

(Cryan Verified Interrogatory Answer, ECF No. 108-5, PageID# 3832.) (emphasis added)[6]

Defendants produced an expert report from John R. Bone on April 1, 2025 purportedly calculating commissions for Defendants Cryan, Bowman, and Haynes *if* they are owed commissions. But, Mr. Bone *assumes* such commissions are owed and acknowledges that he is not giving an opinion on whether any of the Defendants are actually owed commissions:

> I have been asked to develop opinions relating to the amount of damages that would be reasonable to award Counter-Plaintiffs **in the event that Counter-Defendants are found liable** for certain alleged acts as pled in the Individual Defendants' Counterclaims and Third-Party Complaint ("Alleged Acts")

(ECF No. 109, Ex. 2, ¶ 1.) (emphasis added)

> As stated previously, I was retained by Counter-Plaintiffs to review the available facts and formulate opinions relating to the amount of damages that would be reasonable to award Counter-Plaintiffs in the event that Counter-Defendants are found liable for the Alleged Acts as pled in the Counterclaims.

(*Id.* at ¶ 26.) Mr. Bone's expert report cannot create a genuine issue of material fact on whether Defendants are **owed** commissions in the first place. Fed. R. Evid. 702; s*ee also Jesa Enterprises Ltd. v. Thermoflex Corp.*, 268 F. Supp. 3d 968 (E.D. Mich. 2017) (expert's opinion on post-termination commissions was inadmissible because it was based on general industry customs without considering the specific facts of the case). There is no genuine dispute of material fact that all commissions were paid.

### 2. Leek, McCoun, and Fischer cannot support their claims that they are owed commissions.

CBIZ paid Defendants Leek, McCoun, and Fischer all commissions that were due and owing. (Doug Martz Declaration, ¶ 8, ECF No. 108-4, PageID# 3828.)  CBIZ calculated their

---

[6] Defendants Bowman and Haynes provided the same response when asked to itemize their commissions. (Bowman Verified Interrogatory Answer, ECF No. 108-7, PageID# 3848; Haynes Verified Interrogatory Answer, ECF No. 108-6, PageID# 3840.)

commissions as the date of their respective terminations and paid what was owed to them. (Doug Martz Declaration, ¶ 8, ECF No. 108-4, PageID# 3828.) Leek's, McCoun's, and Ficher's employment agreements entitle them to commissions but only if they are employed on the day the actual cash revenue is received by CBIZ:

> **Producer shall receive any compensation outlined herein only so long as Producer is employed by Employer**.

(ECF No. 1-6, PageID# 153; ECF No. 1-7, PageID# 162; ECF No. 1-8, PageID# 173.) (emphasis added)

Leek, McCoun, and Fischer cannot show that they are owed any commissions. CBIZ served interrogatories asking these Defendants to identify the commissions they believe are due and owing and Leek, McCoun, and Fischer each responded by stating that they would produce an expert report on the issue:

> INTERROGATORY NO. 2: Itemize all commissions You claim are owed to You from CBIZ as alleged in paragraph 69 of the Individual Defendants' Counterclaims and Third-Party Complaint, including the amount owed, the customer and carrier, and identify the date on which those commissions became due and owing to You.
>
> ANSWER: Defendant Leek objects to this interrogatory because discovery is on- going, including review of Plaintiffs' most recent document productions. Defendant Leek further objects to Interrogatory No. 2 as overly burdensome. Defendant Leek intends to offer expert testimony to calculate such commissions that are owed to Defendant Leek from CBIZ. An expert report will be produced in accordance with the Court's Case Management Plan, the Federal Rules of Civil Procedure and Local Rules.

(Leek Verified Interrogatory Answer, ECF No. 108-10, PageID# 3867-68.)[7]

---

[7] Defendants McCoun and Fischer provided the same response when asked to itemize their commissions. (McCoun Verified Interrogatory Answer, ECF No. 108-8, PageID# 3855-56; Fischer Verified Interrogatory Answer, ECF No., 108-9, PageID# 3861-62.)

On April 1, 2025, Defendants produced an expert report that discussed the commissions of Cryan, Bowman, and Haynes, but it did not address the commissions of Defendants Leek, McCoun, or Fischer. (ECF No. 109, Ex. 2.) There is no genuine dispute of material fact that these Defendants were paid the commissions owed to them upon their terminations.

### E.    Cryan's, Bowman's, and Haynes' claim for breach of duty of good faith and fair dealing fails as a matter of law because it cannot be a stand-alone claim.

Cryan's, Bowman's, and Haynes's claim for breach of good faith and fair dealing in Count I of the Counterclaim fails because it is brought as a stand-alone claim. The Ohio Supreme Court has long "recognized that there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell v. Nationwide Mut. Ins. Co.,* 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, at ¶ 43. Therefore, Count I of Defendants' Counterclaim fails as a matter of law.

### F.    Defendants' unjust enrichment claim fails because an express contract covers the same subject.

In Count XI of the Counterclaim, all Defendants allege that CBIZ has been unjustly enriched by failing to compensate Defendants for the contractually agreed to commissions. This claim fails because the payment of commission is governed by the Defendants' employment agreements. It is black-letter law that "[A] plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020).

Here, an express contract governs the payment of commissions. The Employment Agreements that all of the Defendants are party to explain how compensation and commissions are calculated and paid. (Cryan Employment Agreement, p. 11, ECF No. 1-3, PageID # 120; Bowman Employment Agreement, p. 8, ECF No. 1-4, PageID# 131; Haynes Employment Agreement, p. 8-9, ECF No. 1-5, PageID# 142-43; McCoun Employment Agreement, p. 8-9, ECF

No. 1-6, PageID# 152-53; Leek Employment Agreement, p. 8, ECF No. 1-7; Fischer Employment Agreement, p. 8-9, ECF No. 1-8, PageID# 172-73.)  Moreover, Defendants admit that their claims are subject to express contracts:  CBIZ "contractually agreed to compensate Individual Defendants for these benefits in the form of commissions." (Counterclaim, ¶ 125,  ECF No. 56, PageID# 1518.)

Because the Defendants' unjust enrichment/quantum meruit claim is barred as a matter of law, this Court should enter summary judgment in favor of CBIZ and Gill on Count XI of Defendants' Counterclaim.

## IV.  CONCLUSION

For the foregoing reasons, CBIZ respectfully requests that the Court grant summary judgment in CBIZ's favor on all Counts of Individual Defendants' Counterclaim and Third-Party Complaint.

Respectfully submitted,

*/s/ Lawrence D. Pollack*
Jeffrey S. Dunlap (0067923)
Lawrence D. Pollack (0042477)
Ashtyn N. Saltz (0089548)
Ryan W. Gillespie (0102606)
**UB GREENSFELDER LLP**
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
(216) 583-7000
(216) 583-7001 (Fax)
jdunlap@ubglaw.com
lpollack@ubglaw.com
asaltz@ubglaw.com
rgillespie@ubglaw.com

*Attorneys for Plaintiffs CBIZ, Inc., CBIZ Benefits & Insurance Services, Inc., CBIZ Insurance Services, Inc., and Third-Party Defendant Mike Gill*

## CERTIFICATE OF SERVICE

I certify that on April 7, 2025, a copy of *Plaintiffs' Memorandum in Support of Motion for Summary Judgment* was electronically filed via the Court's CM/ECF system.  Notice and a copy of this filing will be sent to counsel of record for all parties via the Court's CM/ECF system.

> */s/ Lawrence D. Pollack*
> *One of the attorneys for Plaintiffs CBIZ, Inc.,*
> *CBIZ Benefits & Insurance Services, Inc., and*
> *CBIZ Insurance Services, Inc., and Third-*
> *Party Defendant Mike Gill.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), I hereby certify that this memorandum adheres to the page limitations set forth in the Court's Standing Order 9.A.i.

> */s/ Lawrence D. Pollack*
> *One of the attorneys for Plaintiffs CBIZ, Inc.,*
> *CBIZ Benefits & Insurance Services, Inc., and*
> *CBIZ Insurance Services, Inc., and Third-*
> *Party Defendant Mike Gill.*